Felipa Rivera, Plaintiff, Appellant and Appellee, *v.* Fortuna Mazarredo, Emilio Olabarrieta and United States Fidelity & Guaranty Co., Defendants, Appellees and Appellant the second.

No. 8067. Argued March 5, 1941.—Decided April 5, 1941.

*Carlos Santana Becerra,* for plaintiff appellant. *Géigel & Silva* for defendants-appellees and for defendant appellant.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

In this suit for damages, the District Court of San Juan rendered judgment for plaintiff and sentenced the codefendant Emilio Olabarrieta to pay to the plaintiff Felipa Rivera the amount of $3,000, plus the costs and $300 for attorney's fees, and dismissed the complaint in regard to the codefendants Fortuna Mazarredo and the United States Fidelity and Guaranty Co. The plaintiff appellee took an appeal from this last pronouncement and the codefendant Olabarrieta appealed from the judgment entered against him. The parties have agreed to join both appeals and we shall thus decide them.

The complaint alleges in short that the plaintiff is the legitimate mother and the sole heir of Tomás Rodríguez, who died in San Juan on November 21, 1937, leaving no legitimate or natural descendants nor any other ascendants but the plaintiff; that the codefendants, Fortuna Mazarredo and Emilio Olabarrieta, are mother and son and owners of various enterprises, among them one of freight transportation, for which purpose they maintain a public enterprise and make use of a Ford truck of their property, license plate No. HP–711, the codefendant Emilio Olabarrieta being personally in charge of said enterprise; that said truck was insured on October, 1937, against accidents by the other codefendant, United States Fidelity & Guaranty Co.; that on

November 21 of that year, at 6:30 A. M., and while said truck was being driven by its owner, Emilio Olabarrieta, through Tapia Street of Santurce in a south to north direction, it ran over the son of the plaintiff, Tomás Rodríguez, who was walking in the same direction along the right side of the road, inflicting serious wounds on him, among them a fracture of the skull which caused his death a short time later; that plaintiff's son walked along the extreme right of the road over a strip of land which is not paved, and that the accident was caused by the negligence of the codefendant, Emilio Olabarrieta, who, due to his lack of skill in driving motor vehicles, suddenly swerved it towards his right to avoid a small hole located in the middle of the road, with such a degree of negligence and lack of care that he ran over Tomás Rodríguez, who was walking with his back to the vehicle; that Rodríguez was about 40 or 45 years old, that he enjoyed good health, that he was a merchant engaged in the grocery and restaurant business, in which business he earned daily an average of $3 to $4, and that he was the only support of his mother, the plaintiff, of a sister and of a niece, and that, as the result of his death, the plaintiff has suffered mental anguish, physical pain and pecuniary damages which she calculates in $15,000.

Defendant filed motions requesting a bill of particulars and the striking out of certain pleadings, and demurrers of misjoinder of parties defendant and of lack of facts sufficient to constitute a cause of action, all of which were denied and overruled. They then answered the complaint, denying specifically all the essential facts alleged in it, and as special defense they set up the contributory negligence of Tomás Rodríguez, alleging that he was to blame for the accident because he had suddenly crossed Tapia Street from left to right in such manner that Olabarrieta could not help running him over. They denied that the truck belonged to the codefendants Fortuna Mazarredo and Emilio Olabarrieta and

affirmed instead that it was the the property of a third party, Luis A. Ruiz, also alleging that when the accident occurred, the vehicle was not being driven by Olabarrieta as employee of his mother nor was he engaged in any business of hers and that the accident was not due to the operation or maintenance of the truck HP–711, by the codefendant, Fortuna Mazarredo.

We shall now consider and decide the appeal taken by the plaintiff from that part of the judgment which dismissed the complaint with respect to the codefendants Fortuna Mazarredo and the U. S. Fidelity & Guaranty Co. The appellant charges the lower court with having committed four errors, as follows: when it held that the insurance contract in this case was made by the company to insure Fortuna Mazarredo personally; when it held that the company did not have any civil liability by virtue of the policy; when it held that Emilio Olabarrieta, the owner of the truck, was not covered by the policy and when it released the company from all liability. The four errors involve practically the same question, that is, whether the policy issued by the codefendant U. S. Fidelity & Guaranty Co. in favor of Fortuna Mazarredo, did or did not cover the civil liability object of the action for damages filed in this case. For that reason we shall discuss them jointly, since this is the manner in which the appellant discusses them in his brief.

■ In the opinion delivered by the acting judge, Mr. De la Haba, when he decided this aspect of the case, he expressed himself as follows:

"There is also a conflict in the evidence as to who was the owner of the truck, as while the plaintiff maintains that it belongs to Olabarrieta, according to her sixth allegation, and to Olabarrieta and Mazarredo, according to the fourth allegation, the defendants allege that the vehicle was the property of Luis A. Ruiz.

"We believe that the evidence as a whole shows that the truck was not the property of Ruiz, but of Emilio Olabarrieta. The latter put the deal through with Smallwood Brothers, paid the installments

and provided the expenses of operation, Ruiz only working as a chauffeur, earning a percentage of the profits. For unknown reasons, the truck was registered in Ruiz's name, and when he left Olabarrieta's employment, he transferred the truck to another employee of Olabarrieta, Juan Faria Rosario. The testimony of Ruiz is against his own interest and the court must give it full credit, since it is not reasonable to suppose that if the truck belonged to him, and he had no personal liability because of the accident, he should deny that he was the owner of the truck and as a result run the risk of losing it.

"When Olabarrieta insured the truck HP–711, against accident, with the defendant U. S. Fidelity and Guaranty Co., he acted in the same manner as when he acquired it and registered it in the name of a third party. Instead of insuring it in Ruiz's name or in his own name, Olabarrieta insured it as of the property of his mother, Fortuna Mazarredo, who is, as far as the insurance contract is concerned, the insured party.

"There is not the slightest *bit of evidence* connecting Fortuna Mazarredo with the ownership of the truck HP–711, nor is there any concern or business in which she was engaged with her son Olaba- rrieta, with respect to the operation of said vehicle for purposes of public transportation. With regard to these facts, the *fourth allegation of the complaint*, insofar as it concerns the *defendant, Fortuna Mazarredo, has been proven completely groundless.*

"The insurance contract between the defendant Mazarredo and the U. S. Fidelity & Guaranty Co. considers Fortuna Mazarredo as the insured party, whom the company agrees to insure in accordance with the conditions contained in the general provisions of the insurance policy (Exhibit 'D' of the plaintiff). Clause A in these general provisions reads as follows in its essential part:

" 'Against loss derived from the liability which the law imposes on the insured for the damages caused by personal injuries, including death resulting from said injuries, which any person or persons suffer or allege to have suffered accidentally because of the owner- ship, maintenance or operation of any automobile belonging to and registered in the name of the insured described in the clauses. . . etc.'

"It is clear and evident, that the insurance contract was entered into by the company *to insure Fortuna Mazarredo personally against any civil liability imposed upon her as the result of the ownership, maintenance or operation of the vehicle described in the policy; and*

*if the vehicle did not belong to her, and it was not proven that she had any liability because of its operation or maintenance, it is a logical conclusion that the insurer did not have any civil liability either by virtue of an insurance contract.*

"The insurance contract covers the vehicle only when it belongs to the insured or it is maintained or operated by him. It is a personal obligation between the insured and the company and the latter only answers for the insured, when said party is held liable for damages as the result of the operation of the vehicle covered by the policy. In the instant case the evidence for the plaintiff shows that the defendant Olabarrieta was the owner of the truck, and no relation was shown between the latter and the defendant Mazarredo, beyond the fact that she was his mother. If Mrs. Mazarredo was not the owner of the truck and did not have any connection with Olabarrieta in regard to the operation of the vehicle in a public service concern, it is clear that the insurer is not liable, because the absence of civil liability on the part of the insured is concomitant with the inexistence of any liability on the part of the insurer.

"The owner of the truck, Olabarrieta, was not covered by the policy issued to Mrs. Mazarredo, because the insurer did not contract with him, nor does his civil liability with regard to third parties, affect Mrs. Mazarredo in the least; therefore, this was not one of the risks assumed by the United States Fidelity & Guaranty Co. under the terms of its insurance contract with Fortuna Mazarredo.

"There are many decisions which uphold this doctrine and commentators upon the matter also support this theory. Blashfield Cyclopedia of Automobile Law and Practice, Vol. 6, page 343, Sec. 3962; *Whitney* v. *Employers' Indemnity Corp.* 202 N. W. 236, 4 A.L.R. 495; *Bess* v. *Commonwealth Casualty Co.,* 128 Atl. 250, 101 N. J. Law 380." (Italics supplied.)

We have read carefully the transcript of the evidence and the facts which the lower court found to have been proven are in harmony with the evidence offered by both parties. The cases and authorities cited in the opinion likewise uphold the legal conclusion at which the court arrived in its construction of the terms of the policy.

 The appellant in her brief accepts expressly the conclusion at which the trial court arrived in the sense that the

truck was of the exclusive property of the defendant Emilio Olabarrieta and that he insured it as if it were the property of his mother, the codefendant Fortuna Mazarredo. But the appellant insists, however, in maintaining that the lower court should have held that the insurance contract had been reformed in the sense of insuring Emilio Olabarrieta instead of Fortuna Mazarredo. She cites authorities and decisions to uphold her theory but we are of the opinion that the same cannot prevail for various reasons, as follows: first, because this question was not raised in the lower court, being raised for the first time on appeal before this Court; second, because no allegation was made in the complaint to the effect that the codefendant, United States Fidelity & Guaranty Co. knew that the truck did not belong to Fortuna Mazarredo, or that the policy had been issued by error or fraud in the name of said insured party; third, because the plaintiff did not offer any evidence tending to show that the contracting parties or one of them had incurred in said fraud or error with respect to the issuance of the policy; and, fourth, because the action filed was one for damages and the reformation of the insurance contract, assuming that such a proceeding lies, was not requested in the complaint.

We say "assuming that such a proceeding lies," because this question has not been expressly decided in this jurisdiction. In the case of *Carrión* v. *Lawton,* 44 P.R.R. 448, this Court, through Mr. Justice Córdova Dávila, expressed itself on page 454, as follows:

"Furthermore, the defendants have pleaded the defense of *res judicata* which, if sustained, *makes it unnecessary to determine now whether or not the action for reformation of contract, as it arises from the avernents of the complaint, can be exercised within our civil law.*" (Italics supplied.)

The defense of *res judicata* prevailed in that case and the court did not have to decide the question which had been raised. Neither do we have to decide it definitely in the case

at bar, since, as we have said before, the complaint does not contain the necessary allegations nor was there offered the evidence indispensable in order to consider this case as one which calls for the determination of whether the reformation of the insurance contract did or did not lie. The rule is well established that when an action does not comply with these requisites, the reformation of the contract cannot be granted, even in those jurisdictions in which equity proceedings exist.

The doctrine is set forth in 23 R.C.L. 360, Sec. 57, in the following manner:

"A court of equity cannot reform an instrument except on allega-tions which make out a case for the equitable remedy asked. The allegation must show that the instrument sought to be reformed fails to express the real agreement or transaction between the parties by reason of their mutual mistake or on account of fraud of one of them or fraud or inequitable condition on one side and mistake on the other. In alleging the grounds for reformation, it is sometimes permissible to charge fraud or mistake in the alternative. Obviously the terms of the real agreement, if any existed between the parties, must be distinctly alleged and the instrument sought to be reformed should be set forth in the pleadings or attached thereto as an exhibit so that from it and the allegations as to the real agreement or as to the true intention of the parties it may clearly appear that it does not conform to the real understanding of the parties."

See also Sections 58 and 59 with respect to the manner of pleading the error or fraud. See to the same effect 53 C. J. 1012, Sec. 166.

The complaint in this case does not contain any allegation of error or fraud committed by both parties or one of them in the negotiations which preceded the issuance of the insurance policy. The plaintiff merely said that the truck belonged to Fortuna Mazarredo and Emilio Olabarrieta and that the same was insured by the United States Fidelity & Guaranty Co. Neither did the plaintiff offer any evidence admitted by the court without the objection of the defendants which could justify this Court in considering that the

complaint had been amended in order that the pleadings should be in harmony with the evidence offered. Before a court can modify a contract, under the doctrine of reformation, the party which so requests must show, through adequate evidence, that the contract does not reflect the true intent of the parties, due to an error or fraud. See 6 Blashfield Cyclopedia of Automobile Law and Practice, 308, Sec. 3901.

It is true that the weight of authority in the United States holds that it is not necessary to exercise beforehand the equitable remedy of reformation of contract, and that the same may be requested in an action at law concerning the specific performance of an insurance contract, but it is always required that the pleadings and the evidence call for such an action by the court. In 29 American Jurisprudence 236, in part of Sec. 240, the rule is expressed as follows:

"The weight of authority supports the view that *where the pleadings and evidence* in an action upon an insurance policy are such as would warrant the court in reforming the policy, the court may give effect to the true contract, and enforce the policy as if it were reformed, without making a formal decree of reformation." (Italics supplied.)

See the cases cited in the annotation published in 66 A. L.R. 763, and especially on pages 772 *et seq.*

In other words, the necessary facts must first be alleged and then proven in order that a court be justified in amending the terms of the contract. As this has not been done by the plaintiff in this case, we think that we are not compelled to decide definitely, as we have said before, whether such an action can be brought in Puerto Rico.

Under the facts alleged and proven and the authorities and decisions cited in the opinion *supra,* the lower court did not commit error when it held that the codefendant Emilio Olabarrieta was not covered by the policy and when it released the insurer from any liability.

■ Let us now consider the appeal taken by Emilio Olabarrieta from the judgment which condemned him to pay $3,000, costs and $350 for attorney's fees. He assigns four errors, first, because the lower court denied his motion requesting a bill of particulars; second, when the court denied his motion to strike; third, when it rendered judgment for plaintiff in spite of the complete lack of evidence showing that the plaintiff, Felipa Rivera, was the sole and universal heir of the deceased, Tomás Rodríguez Rivera, and lastly, when the court, after weighing the evidence which had been offered, found that the accident had occurred due to the negligence and lack of skill of the codefendant Emilio Olabarrieta.

In order to decide the last error assigned, it suffices to read the reasons which the lower court adduced in its opinion, for the finding of fact at which it arrived concerning the manner in which the accident had occurred. After analyzing the testimony of the six witnesses for the plaintiff and the sole witness for the defendants, the court expressed itself as follows:

"The witness for the defendants and the witnesses Tomás Rodríguez and Adolfo Betancourt all testified that the truck which belonged to the defendant Olabarrieta was parked on Muñoz Rivera Street in front of the milk stand, and that in order to enter Tapia Street so as to go toward Loíza, the truck had to turn around in the inner section of said street. There were only four houses from the corner of Muñoz Rivera Street to the place of the accident and the distance was not very far according to the witness Rivera Falú who calculated that it was about 80 feet.

"The witnesses Georgina Vélez and Adolfo Betancourt said categorically that Tomás Rodríguez was going down Tapia Street toward Loíza along the right side of said street. Georgina Vélez knows it because moments before she had gone ahead with the niece of the deceased and with her own sister, leaving Rodríguez about one or two houses behind. The witness Betancourt insists in his testimony that he was able to observe the sudden swerve of the truck toward

the right and the blow which it struck Rodríguez with the right side of its body, Rodríguez falling on the right side of the street going towards Loíza Street.

"The witness Marta Ortiz heard a crash and the screeching of the tires. The witness Rivera Falú also heard this noise and Georgina Vélez describes it as similar to that which a car makes when it turns a corner. The witnesses for the plaintiff Marta Ortiz, Rivera Falú and Adolfo Betancourt mention the hole which was near the corner of the street, and Chief. Silén testified that the truck came to a stop about five or ten meters from the hole. The three eye witnesses of the accident, Georgina Vélez, Adolfo Betancourt and Pedro Ocasio, describe the sudden swerve of the truck toward the right before running over Tomás Rodríguez. Leoncio Rivera Falú speaks at a hole near his house, which the automobiles tried to avoid, and of a ditch which crossed Tapia Street and which was located in front of the first house on the corner of Muñoz Rivera Street.

"The court must give great weight to the testimony of Georgina Vélez because of the frank and candid manner in which she testified. in reply to the question of the plaintiff's attorney as well as during the extensive and clever interrogatory of the defendants' attorney. This testimony, together with that of the eye-witness Adolfo Betancourt, and of the witnesses Rivera Falú and Marta Ortiz, and the graphic description given by Chief Silén, leads this court to the conclusion that the accident which caused Rodríguez's death was due to the negligence of the defendant Olabarrieta in driving the truck HP–711, and that the latter, after having passed the first ditch which crosses Tapia Street, more or less in front of the first house on the corner of Muñoz Rivera Street, swerved his truck toward the right in such a violent and negligent manner that he ran over the deceased, Tomás Rodríguez, who was walking along the right side of the road, toward Loíza Street and with his back to the above mentioned truck which was going in the same direction.

"This finding of the court is corroborated by the fact that all the contusions and wounds of the deceased were in the left part of his head and left shoulder, which fortifies the conclusion that he was struck by the right side of the truck and not as the witness Ocasio says that he was hit on the back by the bumper and thrown in front of the vehicle. The *post mortem* examination of Rodríguez's body, carried out by Dr. Martínez Álvarez, did not reveal any contusion or blow in the back, around the legs or the waist of the deceased, something which would have certainly been revealed if Rodríguez

had been struck by the truck and received heavy blows in the back part of his body. On the other hand, if the deceased had been crossing the street towards his right, when he was struck by Olabarrieta's truck, he would have received contusions and blows on the right side of his body and Dr. Martínez Álvarez would have observed some signs which would have revealed that that was the position of the deceased when he was struck down. The *post-mortem* examination revealed that the deceased was a normal man of a uniform muscular structure and healthy. The blow or blows which brought about his death must have been heavy blows in order to cause the fracture of the skull and the profuse hemorrhages which the doctor observed.''

Appellant does not allege that the lower court acted moved by bias, prejudice or partiality in the weighing of the evidence but rather that it committed manifest error in the appraisal of the same. We are of the opinion, after having read carefully the transcript of the evidence, that the court *a quo* correctly appraised the facts of the case, and that the conclusion which it reached that the codefendant Emilio Olabarrieta was negligent in driving the truck must be upheld. The theory of the defendant, according to his sole witness Ocasio, that the accident was due to the negligence of Tomás Rodríguez in crossing Tapia Street from left to right on the very moment that Emilio Olabarrieta was driving along the right side of said street, was destroyed, first by the wounds and contusions which the deceased had on the left side of his body, there being none on the back or on his right side, and second by the preponderance of the evidence for the plaintiff, all of whose witnesses testified that Tomás Rodríguez was walking along the right side of the road and that at no moment did they see him cross from the left to the right side. This error must be dismissed.

The first two assignments which refer to the fact that the motion requesting a bill of particulars and the motion to strike were denied, lack any importance, and even if we should decide that they had been committed, it would not call for the reversal of the judgment. The third error assigned

is indeed substantial; it refers to the fact that the plaintiff did not prove that she was the sole and universal heir of the deceased, Tomás Rodríguez Rivera.

The action brought in this case by Felipa Rivera as the legitimate mother and sole heir of Tomás Rodríguez is authorized by Section 61 of the Code of Civil Procedure because it was shown that Tomás Rodríguez was forty years of age when he died but it has already been decided by this Court in the cases of *Carbou* v. *Mir*, 36 P.R.R. 728; *López* v. *American Railroad Co.*, 50 P.R.R. 1, and *Méndez* v. *Serracante*, 53 P.R.R. 807, that the evidence must show not merely that the plaintiff is the heir of the person because of whose death damages are being claimed, but it must also show that plaintiff is the sole heir with the right to claim them.

Because of the careful study which we have made of the evidence offered by the plaintiff, we are of the opinion that it was not proven that she was the sole heir of her son Tomás Rodríguez Rivera. It appears from the birth certificate of said Tomás Rodríguez (exhibit B of the plaintiff) that he was the legitimate son of Tomás Rodríguez Rodríguez and Felipa Rivera Colón but the plaintiff did not once testify that her husband had died, nor was the death certificate of said Tomás Rodríguez Rodríguez offered in evidence. Neither was it proven whether the son of the plaintiff, Tomás Rodríguez Rivera, had left a will or not when he died. The fact that the plaintiff was his mother and that he died a bachelor and without any children does not make her his sole and universal heir, since the evidence had to show that Tomás Rodríguez Rivera had died intestate.

For the foregoing reasons, the appeal taken by the plaintiff is dismissed; and the third error assigned by the co-defendant Emilio Olabarrieta having been committed, applying the doctrine laid down in the cases of *Carbou* v. *Mir* and *Méndez* v. *Serrano, supra,* we are compelled to reverse the judgment appealed from and remand the case to the lower

court for the sole purpose of determining whether the plaintiff is or is not the sole heir of Tomás Rodríguez Rivera, it being the duty of the lower court to render a new judgment in accord with the evidence presented before it for such purpose.